JUDGE BUCHWALD

07 CV 5946

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| C. GREGORY EARLS, Movant, v. UNITED STATES OF AMERICA, Respondent. | No. 03-cr-0364 (NRB) |

JUN 22 2007
U.S.D.C. S.D. N.Y.
CASHIERS

**AFFIDAVIT OF ARTHUR J. RADIN,**
**CERTIFIED PUBLIC ACCOUNTANT (CPA)**

SIDLEY AUSTIN LLP
Thomas C. Green
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8000
Facsimile: (202)736-8711

*Counsel for the Movant, C. Gregory Earls*
Admission pro hac vice anticipated

Steven M. Bierman
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Counsel for the Movant, C. Gregory Earls*

**Affidavit of Arthur J. Radin, Certified Public Accountant (CPA)**

On June 15, 2007, the affiant appeared before me, a notary public who knows the affiant to be the person whose signature appears below, and stated under oath as follows:

1. My name is Arthur J. Radin. I am 70 years old. I live in Brooklyn, New York. I am the managing partner of Radin, Glass & Co., CPAs. I have been an accountant and auditor for over 45 years. I became a certified public accountant in 1961. For eighteen years, including ten as a partner, I was employed with Touche, Ross & Co., an international accounting firm. During all of these years, I practiced before the Securities and Exchange Commission (SEC), auditing companies filing with the Commission. My firm is presently registered with the Public Company Accounting Oversight Board, which was created pursuant to the Sarbanes-Oxley Act to regulate auditors of public companies. During my over-45 years of auditing experience, I have conducted the audits of thousands of companies.

2. I have served on a number of committees of the New York State Society of CPAs. Currently, I am a member of both the SEC Practice Committee and the Large and Medium-Sized Firms Practice Management Committee. I have previously served on the SEC Regulations Committee of the American Institute of CPAs. Most recently, I authored an article appearing in the April 2007 publication of the New York State Society of CPAs.

3. Under my supervision, my firm performed the audits of U.S. Technologies Corporation (USXX) for each of the two years ended December 31, 2001. My firm issued reports on the financial statements of USXX for each of those years. At the time of Mr. Gregory Earls's trial, I testified on his behalf, indicating that I was unaware of any inaccuracies relating to the financial statements.

4. As part of my audit of USXX, I, including my staff, performed audit procedures to support our opinion on the financial statements for each of the two years ended December 31, 2001. My firm's opinion expressed an unqualified opinion on the financial statements; we did have a modification relating to financing which is unrelated to the appropriateness of the amounts stated in the financial statements. This modification indicates that the company is unable to demonstrate to its auditors that it has sufficient financing to continue for the next year. This type of modification is common in small public companies and does not indicate any issues relating to the financial statement amounts themselves. For the two earlier years, those financial statements were audited by BDO Seidman, a national accounting firm. BDO Seidman also had audited the 2000 financial statements. My firm re-audited those statements and came to the same conclusion reached by BDO Seidman. Both my firm, and BDO Seidman, expressed unqualified opinions on the financial statements; we both had a modification relating to financing which is unrelated to the appropriateness of the amounts stated in the financial statements.

5. I have requested but have been unable to obtain a copy of the Government's schedules introduced at the sentencing hearing. I have been informed by Mr. Earls' counsel that the only available information from those schedules appears in a table provided in Mr. Earls' appellate brief, which the government will not oppose. I have read these schedules which, in this affidavit, are referred to as the government's schedules that were the subject of the February 25, 2005 sentencing hearing for Mr. Earls.

6. I was available and would have testified at the sentencing hearing. If I were permitted to testify, and observed the support that the government presented on behalf of its loss claim and figures, I would have undoubtedly demonstrated the obvious inconsistencies and, what I believe to be, inaccuracies in the amounts provided by the government's schedules and loss claim.

7. I have personally created Exhibit "A" attached hereto. Exhibit A lists the differences between the financial statements and the amounts reported in the government's schedules, attached as Exhibit B. Despite the fact that I do not have the sources of the government's amounts, it is clear that the government presented cumulative totals while the financial statements report annual amounts. Accordingly, I have had to compute the annual amounts. As indicated in Exhibit A, I have noted differences in each year. Those differences total $6,323,308, cumulatively over four years. My position is that, based on the information in this affidavit and my review, the government claimed excessive losses by at least $6 million.

8. Information supplied to me indicates that the government claims that approximately $20 million was invested in USV Partners of which only approximately $8 million was invested in USXX. I believe that actually aproximately $14 million was invested in USXX, leaving $6 million unaccounted for. While I do not have detailed records, from information supplied to me at the time of my audits, I believe that funds were invested directly from USV Partners into various ventures, other than USXX. Such other investment should account for the $6 million.

9. It should be understood that the government's claim and the financial statements are inconsistent. The government's claim relates to amounts deposited by USXX relating to payments from USV Partners, while the financial statements indicate all receipts from stockholders, which included direct payments not from USV Partners. I am unable to determine whether the government's total was intended to include direct investments.

10. The primary source of my information is the published financial statements of USXX, which were filed with the SEC. There has not been a challenge to the reliability of these financial statements. After the publicity relating to USXX, the SEC conducted an investigation which included testimony from both my partner and me. No allegations were made that there was any error in the financial statements. I have worked with BDO Seidman in the past and have found it to be a highly reliable auditing firm and, therefore, I have no reason to question the amounts that BDO Seidman included in the financial statements.

11. I believe that the loss figures reached by the sentencing court miscalculated the loss amount attributable to Mr. Earls as they relate to investments in USXX. It troubles me that the sentencing court relied on the government's calculations, which I have already described as innacurate and unreliable. Had I been given the opportunity to testify at Mr. Earls' sentencing hearing, I would have presented testimony that would have demonstrated the differences between the schedules presented by the government and the amounts reported in the financial statements.

12. My position, in detail, is premised on the following:

a. Based upon the amounts reported in the government's statement of amounts deposited to the USXX accounts (Exhibit B), and comparing the amounts reported as in the filings with the SEC, I believe that $6,323,308 was deposited over and beyond what the government reported to the court in its schedules. I have listed these differences in my Exhibit B.

The following is the analysis for each of 1998 and 2000 (I have circled with my own hand the amounts discussed for identification). I have included in Exhibit "C" the pages from the 2001 Form 10-K; I have included in Exhibit "D" the pages from the 1999 Form 10-K. The SEC requires comparative financial statements and, therefore, all the amounts involved are included in these two filings:

- For 1998, Exhibit "C-1" shows on page 23 "Proceeds from convertible preferred stock issuable" of $3,648,682. Exhibit "C-2" reflects on page 23 the same amount as an addition to total equity with the same caption.

- For 2000, Exhibit "D-1" shows "Proceeds from convertible preferred stock issued or issuable" of $6,497,411. To tie that amount into the statement of stockholders' equity, the additions on schedule F-9, Exhibit "D-2," reflects two sales of shares totaling $17,697,411. This amount includes a "deemed dividend" of $11,200,000, which is noted in Exhibit" D-3," and is an accounting convention unrelated to cash.

The amount for 1998 is based on the audit by BDO Seidman, the amount for 2000 is based on my firm's audit, which as I stated in my published opinion, was performed in accordance with standards required by both my profession and the SEC. I have also included, as Exhibit "E-1," a copy of my firm's report from the SEC filing and, as Exhibit "E-2," a copy of BDO Seidman's report, also from the SEC filing.

b. The amount reported by the government for 2001 showed that USV Partners had invested more into USXX than the financial statements showed. As that result could not, in my opinion, have occurred, its reporting would indicate to me that there was an error in the government's methodology.

c. There are other issues relating to the information submitted which makes me highly suspicious of the government's results:

- The government appears to have used cumulative amounts which, by their nature, are difficult to follow and require further analysis to evaluate. When such information is presented, I, as an experienced auditor, get an immediate reaction that there may be an error necessitating further investigation.

- USXX had an employee, Ms. Allison Holland, on its staff. Ms. Holland had previously worked for an investor, Peter Ackerman, and, per Mr. Earls, had been recommended by Mr. Ackerman. I worked closely with Ms. Holland. At no time did she indicate that amounts were being diverted.

- The financial statements were available to investors as they are all public documents. If in 1998 an amount such as $3 million was omitted from the financial statements, I would be astonished if an investor had not raised questions at the time.

I declare under penalty of perjury that the foregoing is true and correct.

Arthur J. Radin

Sworn and subscribed before me this 15 day of June 2007,

Notary Public

ELLIOTT GLASS
Notary Public, State of New York
No. 604954753
Qualified in Westchester County
Commission Expires August 14th, 2009

EXHIBIT A

U.S. TECHNOLOGIES, INC.
Investments received by U.S. Technologies, Inc.

| | Per Statement of Cash Flows | | | Per Govt Exhibit | | Annual | |
|---|---|---|---|---|---|---|---|
| | Annual | Annual Total | Cumulative | Cumulative | Annual | difference | |
| 1998 Proceeds from convertible Preferred | 3,648,682 | | | | | | |
| Proceeds from issuing convertible debentures | 224,277 | 3,872,959 | 3,872,959 | 350,000 | 350,000 | 3,522,959 | a |
| 1999 Proceeds from convertible Preferred | 1,641,021 | | | | | | |
| Sale of Treasury Stock | 1,050,000 | 2,691,021 | 6,563,980 | 2,784,000 | 2,434,000 | 257,021 | |
| 2000 Proceeds from convertible Preferred | 6,497,411 | 6,497,411 | 13,061,391 | 6,082,983 | 3,298,983 | 3,198,428 | b |
| 2001 Proceeds from convertible Preferred | 1,188,700 | 1,188,700 | 14,250,091 | 7,926,783 | 1,843,800 | (655,100) | |
| | | 14,250,091 | | | 7,926,783 | 6,323,308 | |

a Appears to represent wire transfer that Mr. Earls claims to have copies.

b Government Exhibit page A-78 reports total investments into USXX of $5,784,000. This amount is $2,500,00o higher than the Government figure. I do not know why there is a difference.

EXHIBIT B

# No. 05-1493CR

## United States Court of Appeals for the Second Circuit

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE,

*v.*

C. GREGORY EARLS,
DEFENDANT-APPELLANT.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (NEW YORK CITY)
THE HONORABLE NAOMI REICE BUCHWALD, PRESIDING
DIST. CT. NO. 1:03-CR-364

## BRIEF OF APPELLANT C. GREGORY EARLS

John J.E. Markham, II
(Bar. No. 4744)
MARKHAM & READ
One Commercial Wharf West
Boston, MA 02110
Tel: (617)523-6329
Fax: (617)742-8604

*Attorney for Appellant*

Dated: July 20, 2005 [CORRECTED]

BATEMAN & SLADE, INC. BOSTON, MASSACHUSETTS

EXHIBIT A-1

government's count $20,000,000.00, the arithmetic simply shows otherwise. Moreover USV Partners purchased additional U.S. Technologies stock from third parties who held that stock (Tr. 1964):

> That was the case with U.S. Technologies. We [USV Partners] did buy some shares from the company, but we also bought shares from TPG [Texas Pacific Group], we bought shares from Ken Smith, we bought shares from a trustee. So we bought shares from other people.

The records at trial showed that these purchases by USV Partners amounted to an additional $4.9 million. These were hardly secret, since they were mentioned in the publicly-filed SEC statements. (A-72-83; 220-232)

In summary, the difference between the government's claim that Earls had stolen fully 65% of the invested funds totaling slightly in excess of $20,000,000 and Earls' version of how much money went directly from USV Partners to U.S. Technologies, was like night and day. These figures are cumulative:

| Year | Gov't Exhibits | SEC Statements (Audited) |
|---|---|---|
| 1998 | $ 350.000 | $ 3,700,000 |
| 1999 | $2,784,000 | $ 7,415,703 |
| 2000 | $6,082,983 | $12,025,200 |
| 2001 | $7,926,783 | $14,386,110 |

It should be noted that the SEC figures, much more favorable to Earls, are derived from government exhibits. (A-72-83; 220-232)



EXHIBIT C-1

U.S. TECHNOLOGIES INC.

CONSOLIDATED STATEMENTS OF CASH FLOWS

| YEARS ENDED DECEMBER 31, | 1999 | 1998 | 1997 |
|---|---|---|---|
| OPERATING ACTIVITIES | | | |
| Net loss | $(2,256,481) | $(2,564,709) | $(2,242,745) |
| Adjustments to reconcile net loss to net cash used in operating activities: | | | |
| Net loss from activities of subsidiary held for sale | -- | 972,892 | -- |
| Gain on sale of subsidiary | (642,764) | -- | -- |
| Depreciation and amortization | 178,230 | 68,573 | 179,194 |
| Loss (gain) on disposal of assets | 178,496 | (118,000) | -- |
| Advances, net of deficit in operating results to subsidiary held for sale | (711,682) | (767,450) | -- |
| Impairment of long-lived assets | -- | -- | 1,408,839 |
| Restructuring costs | -- | 90,000 | -- |
| Inventory valuation allowance | -- | -- | 306,888 |
| Provision for bad debts | 66,064 | 122,000 | 18,000 |
| Compensatory stock option grants | 195,740 | -- | -- |
| Changes in assets and liabilities, net of effects of acquisition | | | |
| Receivables | 311,612 | (353,648) | (120,680) |
| Inventory | 325,280 | (510,922) | 90,406 |
| Prepaid expenses | (9,509) | (25,587) | (3,971) |
| Other assets | 28,367 | (29,005) | (10,903) |
| Accounts payable | (119,790) | 747,196 | (238,363) |
| Accrued expenses | (203,965) | (501,951) | 53,033 |
| Net cash used in operating activities | (2,660,402) | (2,870,611) | (560,302) |
| INVESTING ACTIVITIES | | | |
| Net proceeds from disposal of assets | 1,076,000 | 118,000 | -- |
| Proceeds from collection of notes and other receivables | -- | 385,194 | -- |
| Advances to former shareholder | (200,000) | -- | -- |
| Purchase of equipment | (475,347) | (431,298) | (58,942) |
| Net cash paid for acquisition | -- | (730,000) | -- |
| Net cash provided by (used in) investing activities | 400,653 | (658,104) | (58,942) |
| FINANCING ACTIVITIES | | | |
| Proceeds from convertible preferred stock issuable | 1,641,021 | 3,648,682 | -- |
| Sale of treasury stock | 1,050,000 | -- | -- |
| Proceeds from issuance of long-term debt | 11,760 | -- | 36,000 |
| Principal payments on notes payable | (18,607) | (6,909) | (6,179) |
| Preferred stock dividends paid | (525,114) | -- | -- |
| Proceeds from issuance of convertible debentures | -- | 224,277 | -- |
| Purchase of treasury stock | -- | (227,684) | -- |
| Issuance of common stock | -- | -- | 588,364 |
| Net cash provided by financing activities | 2,159,060 | 3,638,366 | 618,185 |
| Increase (decrease) in cash | (100,689) | 109,651 | (1,059) |
| CASH, beginning of period | 110,140 | 489 | 1,548 |
| CASH, end of period | $ 9,451 | $ 110,140 | $ 489 |

See accompanying notes to consolidated financial statements.

EXHIBIT G-2



U.S. TECHNOLOGIES INC.

CONSOLIDATED STATEMENTS OF CHANGES IN STOCKHOLDERS' EQUITY (CAPITAL DEFICIT)

| | COMMON STOCK | TREASURY STOCK | SERIES A CONVERTIBLE PREFERRED STOCK | COMMON STOCK | TREASURY STOCK | PREFERRED STOCK SUBSCRIBED |
|---|---|---|---|---|---|---|
| BALANCE, January 1, 1997 | 21,457,263 | -- | $ -- | $417,146 | $ -- | $ -- |
| Stock issued, change in control | 5,507,320 | -- | -- | 110,143 | -- | -- |
| Note receivable - stockholder | -- | -- | -- | -- | -- | -- |
| Stock options exercised | 50,000 | -- | -- | 1,000 | -- | -- |
| Stock issued to retire debt | 663,800 | -- | -- | 13,276 | -- | -- |
| Stock receivable | 631,870 | -- | -- | 12,637 | -- | -- |
| Accrued interest on note receivable - stockholder | -- | -- | -- | -- | -- | -- |
| Net loss | -- | -- | -- | -- | -- | -- |
| BALANCE, December 31, 1997 | 28,632,063 | -- | -- | 572,643 | -- | -- |
| Stock issued to retire debt | 563,215 | -- | -- | 11,264 | -- | -- |
| Purchase of treasury shares | -- | (400,000) | -- | -- | (227,684) | -- |
| Proceeds from convertible preferred stock issuable | -- | -- | -- | -- | -- | 1,646,682 |
| Advance to stockholder | -- | -- | -- | -- | -- | -- |
| Accrued interest on note receivable - stockholder | -- | -- | -- | -- | -- | -- |
| Transfer to subsidiary to be sold | -- | -- | -- | -- | -- | -- |
| Net loss | -- | -- | -- | -- | -- | -- |
| BALANCE, December 31, 1998 | 29,195,278 | (400,000) | -- | 583,906 | (227,684) | 1,646,682 |
| Redemption of shares | -- | (3,000,000) | -- | -- | (1,050,000) | -- |
| Sale of treasury stock | -- | 3,000,000 | -- | -- | 1,050,000 | -- |
| Proceeds from convertible preferred stock issuable | -- | -- | -- | -- | -- | 3,441,021 |
| Issuance of preferred stock | -- | -- | 5,000,000 | -- | -- | (5,000,000) |
| Compensatory stock option grants | -- | -- | -- | -- | -- | -- |
| Net loss | -- | -- | -- | -- | -- | -- |
| Cash dividends on Series A preferred stock | -- | -- | -- | -- | -- | -- |
| BALANCE, December 31, 1999 | 29,195,278 | (400,000) | $5,000,000 | $583,906 | $ (227,684) | $ 343,703 |

| | ADDITIONAL PAID-IN CAPITAL | ACCUMULATED DEFICIT | NOTE RECEIVABLE-STOCKHOLDER | STOCK RECEIVABLE | TOTAL |
|---|---|---|---|---|---|
| BALANCE, January 1, 1997 | $ 31,729,411 | $(30,526,233) | $ -- | $(156,209) | $ 1,464,570 |
| Stock issued, change in control | 516,431 | -- | -- | -- | 626,574 |
| Note receivable - stockholder | -- | -- | (270,000) | -- | (270,000) |
| Stock options exercised | 11,500 | -- | -- | -- | 12,500 |
| Stock issued to retire debt | 134,274 | -- | -- | -- | 147,550 |
| Stock receivable | -- | -- | (63,387) | -- | (50,750) |
| Accrued interest on note receivable - stockholder | -- | -- | (30,365) | -- | (30,365) |
| Net loss | -- | (3,143,744) | -- | -- | (3,143,744) |
| BALANCE, December 31, 1997 | 32,391,616 | (33,669,977) | (363,752) | (156,209) | (738,314) |
| Stock issued to retire debt | 213,013 | -- | -- | -- | 224,277 |
| Purchase of treasury shares | -- | -- | -- | -- | (627,684) |
| Proceeds from convertible preferred stock issuable | -- | -- | -- | -- | 1,646,682 |
| Advance to stockholder | -- | -- | (151,313) | -- | (151,313) |
| Accrued interest on note receivable - stockholder | -- | -- | (35,503) | -- | (35,503) |
| Transfer to subsidiary to be sold | -- | -- | 536,466 | -- | 536,466 |
| Net loss | -- | (2,064,789) | -- | -- | (2,064,789) |
| BALANCE, December 31, 1998 | 32,604,629 | (35,735,666) | -- | (156,209) | 724,062 |
| Redemption of shares | -- | -- | -- | -- | (1,050,000) |
| Sale of treasury stock | -- | -- | -- | -- | 1,050,000 |
| Proceeds from convertible preferred stock issuable | -- | -- | -- | -- | 1,641,021 |
| Issuance of preferred stock | -- | -- | -- | -- | -- |
| Compensatory stock option grants | 395,740 | -- | -- | -- | 395,740 |
| Net loss | -- | (2,256,481) | -- | -- | (2,256,481) |
| Cash dividends on Series A preferred stock | (626,114) | -- | -- | -- | (626,114) |
| BALANCE, December 31, 1999 | $ 32,374,255 | $(37,992,147) | $ -- | $(156,209) | $ (220,792) |

See accompanying notes to consolidated financial statements.

EXHIBIT D-1

U.S. TECHNOLOGIES INC.

CONSOLIDATED STATEMENTS OF CASH FLOWS

| Years ended December 31, | 2001 | 2000 |
|---|---|---|
| OPERATING ACTIVITIES | | |
| Net loss | $(10,766,356) | $(18,651,097) |
| Adjustments to reconcile net loss to net cash used in operating activities: | | |
| Net loss from activities of subsidiary held for sale | (244,086) | -- |
| Gain on sale of subsidiary | (640,696) | -- |
| Depreciation and amortization | 227,320 | 1,750,927 |
| Equity in losses of associated companies | 394,558 | 640,350 |
| Loss (gain) on disposal of assets | -- | 42,706 |
| Loss on settlement of note receivable | -- | 76,726 |
| Impairment of long-lived assets | 4,249,946 | 12,304,800 |
| Minority interest in loss of subsidiary | -- | (707,740) |
| Inventory valuation allowance | -- | 80,000 |
| Provision for bad debts | -- | 158,000 |
| Issuance of stock options | 15,864 | 746,614 |
| Changes in operating assets and liabilities, net of effects of acquisitions: | | |
| Receivables | 268,344 | (363,964) |
| Inventory | 32,679 | 10,741 |
| Prepaid expenses | 78,071 | 40,796 |
| Other assets | (170,303) | 25 |
| Accounts payable | 791,701 | (703,979) |
| Accrued expenses | 1,550,228 | (3,057,671) |
| Obligation under put option assumed in conjunction with E2E acquisition | (2,000,010) | 2,000,010 |
| Net cash used in operating activities | (6,212,740) | (5,632,756) |
| INVESTING ACTIVITIES | | |
| Net proceeds from disposal of assets | 282,936 | -- |
| Investments in affiliates | (1,463,961) | (972,339) |
| Cash advances on notes receivable | (993,771) | (938,364) |
| Capital expenditures | (42,055) | (210,861) |
| Net cash acquired in (paid for) acquisitions | 6,113,165 | 77,814 |
| Net cash provide by (used in) investing activities | 3,896,314 | (2,043,750) |
| FINANCING ACTIVITIES | | |
| Proceeds from convertible preferred stock issued or issuable | 1,188,700 | 6,497,411 |
| Investments by minority interests | -- | 707,740 |
| Issuance of common stock | -- | 167,523 |
| Net borrowings under line of credit | (197,392) | 197,392 |
| Net proceeds from notes payable-related parties | 1,485,910 | -- |
| Proceeds from issuance of notes payable | 22,000,000 | 151,673 |
| Principal payments on notes payable | (22,072,370) | (48,574) |
| Net cash (used in) provided by financing activities | 2,404,848 | 7,673,165 |
| Increase (decrease) in cash | 88,422 | (3,341) |
| CASH, beginning of period | 6,110 | 9,451 |
| CASH, end of period | $ 94,532 | $ 6,110 |

 EXHIBIT D-2

U.S. TECHNOLOGIES INC.

CONSOLIDATED STATEMENTS OFSTOCKHOLDERS' EQUITY (CAPITAL DEFICIT)

| | Total |
|---|---|
| BALANCE, DECEMBER 31, 1999 | $ (220,792) |
| Stock issuances related to exercise of options and warrants and stock issued in connection with the Buyline acquisition | 207,787 |
| Retirement of treasury stock | -- |
| Issuance of Series A and C Preferred Stock for cash Series B Preferred Stock in connection with the E2E acquisition and related deemed dividends | 16,498,211 |
| Issuance of Series D preferred stock to settle liability of a subsidiary | 170,775 |
| Proceeds from convertible preferred stock issuable | 1,199,200 |
| Compensatory stock option grants | 746,614 |
| Net loss | (18,651,097) |
| BALANCE, DECEMBER 31, 2000 | (49,302) |
| Issuance of Convertible Preferred Series G for cash | 335,000 |
| Proceeds from convertible preferred stock issuable | 853,700 |
| Issuance of Series F in connection with the Yazam acquisition and related deemed dividends | 7,713,790 |
| Issuance of common stock upon conversion of Preferred Stock | -- |
| Issuance on exercise of warrants | 880,942 |
| Cancellation on non-payment of subscription | -- |
| Compensatory stock option grants | 15,869 |
| Series F redemption adjustment | (6,326,546) |
| Net loss | (11,010,442) |
| BALANCE, DECEMBER 31, 2001 | $ (7,586,989) |

See accompanying notes to consolidated financial statements.

Increase in Paid in Capital 16,498,211
" " " " 1,199,200

17,697,411
11,200,000

NON CASH 6,497,411

EXHIBIT D.3



U.S. TECHNOLOGIES INC.

CONSOLIDATED STATEMENTS OF CASH FLOWS

| Years ended December 31, | 2001 | 2000 |
|---|---|---|
| Supplemental disclosures of cash flow information: | | |
| Cash paid during the year for interest. | $ 83,058 | $17,000 |
| Cash paid during the year for taxes. | -- | -- |
| Supplemental schedule of non-cash investing and financing activities: | | |
| Conversion of notes receivable into investments in Associated Companies | 555,000 | 771,638 |
| Conversion of note receivable acquired in E2E acquisition to investment in Associated Companies | -- | 747,500 |
| Note payable issued for payment of the premium of an insurance policy | -- | 85,000 |
| Common stock issued in conjunction with Buyline acquisition | -- | 40,264 |
| Series B mandatorily convertible preferred stock issued in conjunction with E2E acquisition.. | -- | 11,200,000 |
| Series D mandatorily convertible preferred stock issued to settle the liability of a subsidiary | -- | 170,775 |
| Series F convertible preferred stock issued in conjunction with Yazam acquisition. | 7,713,790 | -- |
| Deemed dividends relative to Series A, B, C and F preferred stock | 4,595,510 | 14,757,650 |

On March 27, 2001, the Company exchanged 27,434 Shares of Series F convertible preferred stock for all the outstanding shares of Yazam (See Note 3). In conjunction with the acquisition, liabilities were assumed as follows:

| | |
|---|---|
| Fair value of assets acquired, including net cash acquired of $ 6,113,165 | $33,008,049 |
| Cash paid | (22,000,000) |
| Warrants issued | (880,000) |
| Value of Series F convertible preferred shares issued | (7,713,790) |
| Acquisition costs | (399,914) |
| Liabilities assumed | $ 2,014,345 |

On April 12, 2000, the Company exchanged 112,000 shares of Series B mandatorily convertible preferred stock for all of the outstanding shares of E2E (See Note 3). In conjunction with the acquisition, liabilities were assumed as follows:

| | |
|---|---|
| Fair value of assets acquired | $15,180,000 |
| Value of Series B mandatorily convertible preferred shares issued | (11,200,000) |
| Liabilities assumed | $ 3,980,000 |

On April 26, 2000, the Company acquired a controlling interest in Buyline in exchange for conversion of existing notes and additional cash investment. Additionally, the Company acquired additional shares of Buyline from its founder in exchange for 23,008 shares of Company common stock. In conjunction with the acquisition, liabilities were assumed as follows:

| | |
|---|---|
| Fair value of net assets acquired, including net cash acquired of $77,814 | $2,400,000 |
| Notes receivable converted into Buyline equity | (1,131,000) |
| Value of Company common shares issued | (40,000) |
| Liabilities assumed | $ 1,229,000 |

See accompanying notes to consolidated financial statements.

EXHIBIT G-1



# REPORT OF INDEPENDENT CERTIFIED PUBLIC ACCOUNTANTS

Board of Directors
U.S. Technologies Inc.
Washington, D.C.

We have audited the accompanying consolidated balance sheets of U.S. Technologies Inc. as of December 31, 2001 and 2000 and the related consolidated statements of operations, stockholders' equity (capital deficit), and cash flows for each of the two years in the period ended December 31, 2001. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements and schedule are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements and schedule. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall presentation of the financial statements and schedule. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of U.S. Technologies Inc. at December 31, 2001 and 2000, and the results of its operations and its cash flows for each of the two years in the period ended December 31, 2001 in conformity with accounting principles generally accepted in the United States of America.

The accompanying consolidated financial statements have been prepared assuming that the Company will continue as a going concern. As discussed in Note 2 to the consolidated financial statements, the Company has suffered recurring losses from operations and has a working capital and net capital deficiency that raise substantial doubt about its ability to continue as a going concern. Management's plans in regard to these matters are also described in Note 2. The financial statements do not include any adjustments that might result from the outcome of this uncertainty.

/s/ Radin, Glass & Co., LLP
Certified Public Accountants

New York, NY
April 10, 2002

EXHIBIT E-2

REPORT OF INDEPENDENT CERTIFIED PUBLIC ACCOUNTANTS

To the Stockholders and Board of Directors of
U.S. Technologies Inc.
Marietta, Georgia

We have audited the accompanying consolidated balance sheets of U.S. Technologies Inc. as of December 31, 1999 and 1998, and the related consolidated statements of operations, changes in stockholders' equity (capital deficit) and cash flows for each of the three years in the period ended December 31, 1999. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with generally accepted auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of U.S. Technologies Inc. as of December 31, 1999 and 1998, and the results of its operations and its cash flows for each of the three years in the period ended December 31, 1999 in conformity with generally accepted accounting principles.

BDO Seidman, LLP

Atlanta, Georgia
March 17, 2000, except for Note 18,
which is as of April 5, 2000