Steven M. Bierman (SB 6615)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

Thomas C. Green (admission *pro hac vice* pending)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

*Counsel for the Movant-Applicant*
C. GREGORY EARLS

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------- X
                                                    :
C. GREGORY EARLS,                                   :   No. 07-cv-5946 (NRB)
                                                    :   (No. 03-cr-0364 (NRB))
               Movant-Applicant,                    :
                                                    :
       v.                                           :
                                                    :
UNITED STATES OF AMERICA,                           :
                                                    :
               Respondent.                          :
--------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR A CERTIFICATE OF APPEALABILITY**

## INTRODUCTION

C. Gregory Earls, by his undersigned counsel, pursuant to 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22, requests that this Court issue a certificate of appealability so that he may appeal the judgment entered against him.

## PROCEDURAL BACKGROUND

On June 22, 2007, Mr. Earls filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. On July 10, 2007, the government filed its opposition, responding to Mr. Earls's arguments on their merits. On July 26, 2007, in the midst of merits briefing, the Court requested that the parties submit letter briefing on "whether the § 2255 petition is properly presented to the Court" despite the fact that the government did not raise the issue of procedural default. Ltr. at 1. On August 6, 2007, Mr. Earls filed his letter brief in response to the Court's request, noting that the petition is properly presented to the Court and that the interests of justice would be ill served by a dismissal of his petition where his sentence was based on mathematical errors and disputed facts. On August 28, 2007, Mr. Earls filed his reply in further support of his petition. On September 27, 2007, the Court denied relief. Mr. Earls is timely filing a Notice of Appeal and the instant Motion for a Certificate of Appealability.

## STANDARD FOR A CERTIFICATE OF APPEALABILITY

An appeal from a denial of a petition for a writ of habeas corpus cannot be taken as of right. Instead, such an appeal may only be taken if the District Court or the Court of Appeals issues a certificate of appealability. 28 U.S.C. § 2253; FED. R. APP. P. 22(b). When an applicant for a writ of habeas corpus files a notice of appeal, as Mr. Earls has done here, "the district judge who rendered the judgment must either issue a certificate of appealability or state why a certificate should not issue." FED. R. APP. P. 22(b).

To obtain a certificate of appealability, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is not strict. It is met if the petitioner demonstrates "that reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted). The applicant need not show that he will necessarily prevail on the merits of his claims. *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). Indeed, it is "consistent with § 2253 that a [certificate of appealability] will issue in some instances where there is no certainty of ultimate relief." *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003); *see also Tennard v. Dretke*, 542 U.S. 274, 282-288 (2004) (rejecting Fifth Circuit's more-restrictive '"constitutional relevance"' test for determining whether certificate should issue when district court denies habeas petition).

An additional element is required for a habeas petition that is denied on procedural grounds: the petitioner must show that a reasonable jurist could debate the District Court's conclusion that the claim was procedurally barred. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Mr. Earls respectfully submits that this Court's procedural conclusions as well as the merits of Mr. Earls's constitutional claims are, at a minimum, "debatable" among reasonable jurists, "adequate to deserve encouragement to proceed further," and that this Court should therefore grant Mr. Earls's request for a certificate of appealability. *Id.*

**ARGUMENT**

I.  **Jurists of Reason Would Find Debatable This Court's Conclusion That the Habeas Petition Was Procedurally Deficient**

This Court *sua sponte* raised purported procedural deficiencies, an affirmative defense to Mr. Earls's habeas petition. Jurists of reason could, at the very least, disagree with the Court's summary determination that Mr. Earls's Sixth Amendment claim was procedurally barred. Tellingly, the Court begins its analysis by misstating Mr. Earls's position. In its Memorandum and Order, the Court stated that "contrary to petitioner's position, this Court may raise the procedural default issue *sua sponte*." Mem. & Order at 3, n.4. However, Mr. Earls clearly did not argue that the Court may *never* raise the procedural default issue *sua sponte*. In fact, Mr. Earls argued that the Court *may* raise procedural default *sua sponte*, and he quoted the same passage from *Acosta v. Artuz*, 221 F.3d 117 (2d Cir. 2000), that the Court later referenced in its Memorandum and Order to support its conclusion that it had the authority to raise the procedural issues. Ltr. at 1. The Second Circuit in *Acosta* held that a court may "raise *sua sponte* affirmative defenses where the defense implicates values beyond the interests of the parties." *Id.* at 120. Whether the fundamental rule that "courts should not raise *sua sponte* nonjurisdictional defenses not raised by the parties," *id.* at 122, should give way to the Court's desire for judicial economy in this instance is clearly a matter that reasonable jurists could debate.[2] *See Arizona v. California*, 530 U.S. 392, 412-13 (2000) (cautioning that *sua sponte* consideration of an affirmative defense should be done sparingly by the trial courts even in those narrow circumstances where it is authorized because it "erodes the principle of party presentation so

---

[2] It should be noted that the Court has not expressly stated its basis for raising the affirmative defense *sua sponte*. Thus, Mr. Earls is left to speculate that the reason for why the Court thought it was important to raise the defense is to promote the interest of judicial economy.

basic to our system of adjudication"); *see also Thomas v. Crosby*, 371 F.3d 782, 793 (11th Cir. 2004) ("The conditions under which a court may consider a nonjurisdictional matter sua sponte have never adequately been considered and have caused a great deal of confusion among jurists."); *United States v. Burke*, 504 U.S. 229, 246 (Scalia, J., concurring) ("The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one.") (citing *United States v. Pryce*, 938 F.2d 1343, 1355 (D.C. Cir. 1991) (Silberman, J., dissenting in part)); Wright, King & Klein, Federal Practice and Procedure: Criminal 3d § 596.1, at p. 741 n.23 (collecting cases holding that the government waives its procedural-default defense if it fails to raise it in its response to the Section 2255 motion).

The Court's argument that Mr. Earls had previously raised his Sixth Amendment argument on appeal is similarly debatable. On appeal, Mr. Earls argued that it was error for the sentencing court to rely on an "emotional letter submitted by an investor who blamed Earls for the trauma caused by not taking pills and by asserting time and again that Earls had stolen $13.8 million dollars when neither of these facts was the result of a jury finding." Appellant Br. at 45. His habeas petition, however, alleges that the Court's reliance on the presentence investigation report's determinations for amount of loss and number of victims violated his Sixth Amendment rights because they were not facts found by the jury or authorized by the jury's verdict. Reasonable jurists could debate whether the Court's reliance on the amount of loss and number of victims provided in the presentence investigation report ("PSR") was a different *question* from the "emotional letter" matter argued on appeal.[3] *See United States v. Sanin*, 252 F.3d 79, 83 (2d

---

[3] Even if it could be said that the questions presented in the habeas petition differed from the questions raised on appeal, Mr. Earls has already stated that he would "agree[] with the [Court's]
*(Footnote continued)*

Cir. 2001) (stating that § 2255 petitions "cannot be used to relitigate *questions* which were raised and considered on direct appeal" (emphasis added and quotation marks omitted)).

Additionally, jurists of reason could find that Mr. Earls would be able to overcome any procedural default resulting in a waiver of his "Unresolved Objections Claim," and take issue with the Court's reliance on *United States v. Frady*, 456 U.S. 152 (1982). A § 2255 petition is distinct from a direct appeal. *Frady*, however, merely holds that a different standard of review applies to an appellate court ruling on direct appeal as opposed to appellate review of a district court's decision on a § 2255 motion. *Id.* at 164 ("By adopting the same standard of review for § 2255 motions as would be applied on direct appeal, the Court of Appeals accorded no significance whatever to the existence of a final judgment perfected by appeal.").

Moreover, reasonable jurists could debate whether *vel non* Mr. Earls falls squarely into either of two exceptions to procedural default that the Second Circuit articulated in *Graziano v. United States*, 83 F.3d 587 (2d Cir. 1996). *Graziano* held that "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Id.* at 589-90. Mr. Earls has, in his § 2255 motion, expressly argued *both* constitutional errors and errors of fact that constitute a complete miscarriage of justice. The opening sentence of argument presented in Mr. Earls's motion reads: "The sentence imposed on Mr. Earls is unconstitutional and is otherwise open to collateral attack because it has

---

suggestion that his appellate counsel provided ineffective assistance in failing to present these arguments on direct appeal. There [would be] no explanation for why his counsel omitted these arguments, especially when considering the fact that Mr. Earls's counsel at sentencing was the *same* counsel that represented him on direct appeal." Reply at 3 n.3. The Court has failed to address Mr. Earls's alternative, ineffective-assistance claim, just as it has failed to resolve his claim that the imposed sentence constituted a fundamental miscarriage of justice.

6

resulted in a fundamental miscarriage of justice." Mot. at 5. Standing alone, the basic mathematical errors in the PSR, which the government does not even attempt to refute in its response, provide a compelling reason "adequate to deserve encouragement to proceed further" to correct the erroneous sentence calculation.[4] *Slack*, 529 U.S. at 484.

**II.    Jurists of Reason Would Find Debatable the Propriety of the Sentencing Court's Wholesale Adoption of the PSR's Reported Amount of Loss and Number of Victims When Neither Was Established at Trial, Unresolved Objections Remain to Both Material Findings, and the Court Refused to Hear Contradicting Evidence**

The sentence imposed on Mr. Earls is unconstitutional and is otherwise open to collateral attack because it has resulted in a fundamental miscarriage of justice. The Sixth Amendment of the United States Constitution provides that in all criminal prosecutions, "the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. When a jury does not make findings as to the loss amount and number of victims affected by the criminal conduct, but the sentencing court relies on such findings to exponentially increase a defendant's prison sentence, it cannot be said that the jury has authorized the resulting sentence in any meaningful sense. *See United States v. Booker*, 543 U.S. 220, 237 (2005). Jurists of reason could debate whether the sentencing court's reliance on the government's calculation of loss amount and number of victims, as reported in the PSR, conflict with the spirit of *Booker*.[5] *See,*

---

[4] The Court's Memorandum and Order does not even address Mr. Earls's alternative argument that "Federal Rule of Criminal Procedure 36 gives the sentencing court the power and duty to correct mistakes in the court's record. FED. R. CRIM. P. 36. Rule 36 expressly provides that the court may correct the record at any time, even on its own initiative. *Id.*" Reply at 4 n.4.

[5] In addition, jurists of reason could debate whether the Sixth Amendment applies to orders of restitution, an issue preserved by Mr. Earls in his petition. Mot. at 6 n.4. Various circuit courts have wrestled with the question, which has not been addressed by the Supreme Court and, as recently highlighted by the Third Circuit's splintered 7-5 en banc decision in *United States v. Leahy*, 438 F.3d 328 (3d Cir. 2006). there is considerable room for questioning the rule's continuing vitality. *See id.* at 339 (McKee, J., dissenting in part) ("I do not agree that a judge can

*(Footnote continued)*

e.g., *Cunningham v. California*, 127 S. Ct. 856, 865, 549 U.S. ___ (2007) (holding that "the jury's verdict alone limit[s] the permissible sentence"); *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (observing that the "statutory maximum" for Sixth Amendment purposes is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*" (emphasis in original)); *Harris v. United States*, 536 U.S. 545, 557-66 (2002) (plurality opinion) ("*Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered . . . the domain of the jury . . . by those who framed the Bill of Rights.").

Furthermore, the sentence imposed on Mr. Earls was based on flawed calculations. The record plainly reveals that the sentencing court miscalculated the number of victims and loss amount attributable to Mr. Earls, based on incorrect calculations appearing in the PSR. The government's own evidence, presented at sentencing, conflicts with the sentencing court's findings necessitating the enhancements to Mr. Earls's base offense level. A summary review of the record makes clear that the government's mathematical calculations of the amount allegedly misappropriated by Mr. Earls and the number of affected victims are unreliable and patently incorrect. The sentencing court should have allowed Mr. Earls the opportunity to present rebuttal evidence to demonstrate the mathematical errors made by the government. Reasonable jurists could debate whether the Court erred in refusing to allow Mr. Earls the opportunity to do so and by relying on the patently flawed calculations in the PSR. *See United States v. Mejia-Pimental*, 477 F.3d 1100, 1102 (9th Cir. 2007) ("On appeal, we reversed and remanded for resentencing because the district court had failed to resolve 'significant . . . objections' to the PSR."); *United States v. Osborne*, 291 F.3d 908, 912 (6th Cir. 2002) (requiring resentencing

---

determine the amount of restitution . . . without violating the Sixth Amendment.").

where the district court failed "to make findings with respect to, and expressly rule on, objections . . . to the presentence report"); *United States v. Corrado*, 227 F.3d 528, 540 (6th Cir. 2000) (holding that summary acceptance of a PSR is inadequate to dispose of a defendant's challenges to a PSR).

Although Mr. Earls was not permitted to present rebuttal evidence to the government's erroneous mathematical conclusions, he did notify the sentencing court that he disputed those determinations. And the Court relied on those disputed numbers at sentencing. *See* Feb. 25, 2005 Tr. 38:23-39:1 ("There is ample support in the record for an offense level of 34 . . . . Mr. Earls defrauded over $20 million from over nine years [*sic*][6]."). Reasonable jurists could debate whether relying on disputed matters constitutes grounds for resentencing. *See, e.g., United States v. Brown*, 314 F.3d 1216 (10th Cir. 2003) (remanding for a determination of whether the disputed matters were taken into account at sentencing where the sentencing court failed to make express findings on certain disputed sentencing issues); *United States v. Mandell*, 905 F.2d 970 (6th Cir. 1990) (requiring resentencing where record indicated that sentencing court failed to make express finding on disputed facts in the PSR and had to rely on disputed information to calculate offense level); *United States v. Jimenez-Rivera*, 842 F.2d 545 (1st Cir. 1988) (concluding that a remand is necessary where a sentencing court may have relied on disputed information in the PSR for either clarification or resentencing).

## CONCLUSION

As the foregoing analysis demonstrates, reasonable jurists could disagree with the Court's conclusions that Mr. Earls's habeas claims were procedurally barred or defaulted. And, Mr.

---

[6] There is no basis whatsoever for suggesting that the charged fraud occurred over a nine-year period. The government itself has always taken the position that the charged fraud occurred over a four-year period (1998, 1999, 2000, 2001).

Earls's constitutional claims, which were unaddressed by the Court, are similarly valid and debatable. Jurists of reason could disagree with the sentencing court's reliance on facts not found by the jury to increase Mr. Earls's sentence and its decision not to allow Mr. Earls to present rebuttal evidence to contradict the government's and PSR's erroneous mathematical conclusions. Moreover, reasonable jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Accordingly, this court should issue a certificate of appealability.

Respectfully submitted,

Dated: October 26, 2007

SIDLEY AUSTIN LLP

By: /s/ Steven M. Bierman
Steven M. Bierman (SB 6615)[7]
787 Seventh Avenue
New York, NY 10019
(212) 839-5510

Thomas C. Green (*pro hac vice* pending)
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

*Counsel for the Movant-Applicant*
C. GREGORY EARLS

---

[7] Mr. Bierman continues to appear on behalf of Mr. Earls because the Court has not ruled on the pending motion to admit Mr. Green *pro hac vice*.

STATE OF NEW YORK        )
                         )   s.s.:
COUNTY OF NEW YORK       )

## AFFIDAVIT OF SERVICE

I, George L. Conover, being over the age of eighteen (18) years, and not a party to this action, and being first duly sworn, state on oath that on October 26, 2007, I served the annexed Memorandum of Law in Support of Notice of Motion by causing a true copy to be deposited in an official mail depository exclusively maintained by the U.S. Postal Service within the State of New York upon:

>AUSA William Stellmach
>United States Attorney for
>the Southern District of New York
>One St. Andrews Plaza
>New York, New York   10017

_____
George L. Conover

Subscribed and sworn to me this
26th day of October, 2007

_____
Notary Public

WILLIAM U. GENG
NOTARY PUBLIC, State of New York
No. 31-4874791
Qualified in New York County
Commission Expires May 31, 2010